## UNITED STATES DISTRICT COURT
## MIDDLE  DISTRICT OF FLORIDA

**WALTER REED, on behalf of himself**
**and on behalf of all others similarly situated,**

**Plaintiffs,**

**v.**                                                    **CASE NO.**

**CRST EXPEDITED, INC.**
**a foreign for profit company,**

**CRST.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WALTER REED, by and through his attorneys, and on behalf of himself, the

Putative Classes set forth below, and in the public interest, brings the following Class

Action Complaint as of right against CRST EXPEDITED, INC. including, subsidiaries, divisions

and affiliates ("CRST"), under the Fair Credit Reporting Act of 1970, as amended ("FCRA"), 15

U.S.C. §1681 et seq.

## PRELIMINARY STATEMENT

1.      CRST  EXPEDITED  INC.  ("CRST")  is  a  trucking  company.  CRST  routinely

obtains  and  uses  information  in  consumer  reports  to  conduct  background  checks  on

prospective employees, conditional hires, trainees and existing employees, and frequently  rely

on  such  information,  in  whole  or  in  part,  as  a  basis  for  adverse employment action, such

as termination, reduction of hours, change in position, failure to  hire, and failure to promote.

2.      CRST is a serial violator of the FCRA.  First, at the behest of third parties, CRST

procures consumer reports on individuals applying for employment or placement in a company

paid driving school.  These consumers are never informed that they are subject to a background

check conducted by CRST.  In the event adverse employment action is taken, these consumers are never informed the adverse employment decision was based upon the background check conducted by CRST.  Second, consumers applying for employment or placement in a company paid training program directly with CRST are not provided lawful disclosure or authorization documents prior to CRST procuring a consumer report for employment purposes.  Third, CRST does not provide applicants for employment, conditional hires, or existing employees with pre-adverse action notice before taking adverse action based upon the results of a consumer report.

3.    The FCRA, 15 U.S.C. §1681b, makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose. Such use becomes lawful if and only if the "user" – in this case CRST – have complied with the statute's strict disclosure and authorization requirements. CRST willfully violated these requirements in multiple ways, in systematic violation of Plaintiff's rights and the rights of other putative class members.

4.    CRST violated 15 U.S.C. §§1681b(b)(2)(B)(2)(B)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without providing notice that a consumer report may be procured for employment purposes and a summary of rights pursuant to Section 615(a)(3) of the FCRA.

5.    CRST violated 15 U.S.C. §§1681b(b)(2)(B)(2)(B)(ii) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without consent to the procurement of their report by CRST *at the time* the consumer report was procured.

6.    CRST violated 15 U.S.C. §1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute. Under this subsection of the FCRA,

CRST required to disclose to its applicants and employees – *in a document that consists solely of the disclosure* – that it may obtain a consumer report on them for employment purposes, prior to obtaining a copy of their consumer report. CRST willfully violated this requirement by failing to provide Plaintiff with a copy of a document that consists solely of the disclosure that it may obtain a consumer report on him for employment purposes, prior to obtaining a copy of his consumer report.

7.      CRST violated 15 U.S.C. §1681b(b)(3)(A) which requires employers to notify applicants of a pending adverse action based in whole or in part on the consumer report with both a copy of the consumer report and a description of the applicant's rights under the FCRA. Specifically, CRST took adverse action based on consumer reports without first providing Plaintiff and other putative class members a copy of the pertinent consumer report, a summary of their rights under the FCRA, or providing them a reasonable opportunity to respond to the information in the report.

8.      Based on the foregoing violations, Plaintiff asserts FCRA claims on behalf of himself and putative classes consisting of consumers upon whom CRST procured consumer reports in violation of the FCRA.

9.      In Counts One and Two, Plaintiff asserts a FCRA claim under 15 U.S.C. §§1681b(b)(2)(B)(2)(B)(i)-(ii) on behalf of a "Indirect Background Check Class" consisting of:

> **All consumers in the United States who were the subject of a consumer report procured by CRST that was caused to be procured by a third party within five years of the filing of this complaint through the date of final judgment.**

10.    In Counts Three and Four, Plaintiff asserts an FCRA claim pursuant to 15 U.S.C. §§1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class" consisting of:

> **All CRST applicants, trainees and employees in the United States who were the subject of a consumer report for employment purposes that was procured by CRST within the last five years of the filing of this complaint through the date of final judgment.**

11.    In Count Five, Plaintiff asserts a FCRA claim under 15 U.S.C. §1681 b(b)(3)(A) on behalf of an "Adverse Action Class" consisting of:

> **All CRST, Inc. applicants, employees and trainees in the United States against whom adverse employment action was taken based on information contained in a consumer report obtained by CRST, Inc., within five years of the filing of this complaint through the date of final judgment in this action who were not provided the proper pre-adverse notice as required by the 15 U.S.C. §1681b(b)(3)(A).**

12.    On behalf of himself and the putative classes, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

## THE PARTIES

13.    Individual and representative Plaintiff, Walter Reed ("Plaintiff") lives in Florida. Plaintiff is a member of the putative classes defined below.

14.    CRST is a corporation and a user of consumer reports as contemplated by the FCRA, at 15 U.S.C. §1681b.

## JURISDICTION AND VENUE

15.    This Court has federal question jurisdiction under the FCRA, 15 U.S.C. §1681p, and 28 U.S.C. §1331, and venue is proper because CRST regularly sells products and services in this District and Plaintiff resides in this District.

## ALLEGATIONS REGARDING CRST'S BUSINESS PRACTICES

### *Background Checks*

16.    CRST uses placement services and recruiters to source drivers.  When presented with candidates for employment by driver placement services and recruiters, CRST conducts background checks on the candidates for employment purposes

17.    In such cases, CRST has no direct contact with the consumer upon whom they are procuring the consumer report.  The consumer is without knowledge CRST is procuring their consumer report for employment purposes at the time CRST procures the report.

18.    CRST does not do the background check in-house.  CRST relies on consumer reporting agencies to obtain the information on the candidate.  These reports are consumer reports as defined by the FCRA.

19.    In other cases, applicants for employment or individuals who have been conditionally hired by CRST apply (or re-apply) directly to CRST.

20.    In the event CRST takes adverse action against an applicant for employment, conditionally hired employee, or employee CRST does not provide the effected individual with pre-adverse action notice or a copy of the consumer report upon which the action was based.

### *FCRA Violations Relating to Background Check Class*

21.    Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

(i)    a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

(ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report.

15 U.S.C. §§1681b(b)(2)(A)(i)-(ii) (emphasis added).

21.    However, there is an exception to written disclosure and authorization requirements of 15 U.S.C. §§1681b(b)(2)(A)(i)-(ii).  The exception applies to a person procuring a consumer report on a consumer in connection with the consumer's application for employment only if:

> (i)    the consumer is applying for a position over which the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49, or a position subject to a safety regulation by a State transportation agency; and
>
> (ii)   as of the time at which the person procures the report or causes the report to be procured the only interaction between the consumer and the person in connection with that employment application has been by mail, telephone, computer or other similar means.

15 U.S.C. §§1681b(b)(2)(C)(i)-(ii)

22.    If the exception applies, 15 U.S.C. §§1681b(b)(2)(B)(i)-(ii) dictate the notices required.  The provision is titled "*Application by mail, telephone, computer or other similar means*" and reads as follows:

> If a consumer described in subparagraph (C) above applies for employment by mail, telephone, computer, or other similar means, at any time before a consumer report is procured or caused to be procured in connection with that application –
>
> (i)    the person who procures the consumer report on the consumer for employment purposes shall provide to the consumer, by oral, written or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under Section 615(a)(3); and
>
> (ii)   the consumer shall have consented, orally or in writing, or electronically to the procurement of the report by that person.

15 U.S.C. §§1681b(b)(2)(B)(i)-(ii) (emphasis added).

23.    Since there was no direct, or even indirect communication or contact between CRST and consumers presented by third parties, CRST failed to satisfy these notice requirements because CRST, are at least, with respect to consumers presented to CRST by third parties, did not provide notice to that consumer, that a consumer report may be obtained for employment purposes along with a summary of consumer's rights under Section 615(a)(3).

24.    Consequently, CRST procured consumer reports on Plaintiff and the putative Indirect Background Check Class members without their consent because they never consented to CRST procuring their consumer report *at the time* the report was procured.

25.    Accordingly, CRST failed to satisfy the requirements of 15 U.S.C. §§1681b(b)(2)(A)(i)-(ii) because CRST procured consumer reports on Plaintiff and the putative class members without providing *any* written disclosures or receiving *any* written authorization prior to procuring such reports.

26.    In cases where consumers applied directly for employment with CRST, CRST violated 15 U.S.C. §§1681b(b)(2)(A)(i)-(ii) because CRST provided Plaintiff and the putative class members with unlawful disclosure and authorization documents.  Specifically, CRST does not have a stand-alone FCRA disclosure or authorization form. The FCRA requires that a disclosure not contain extraneous information. This is commonly referred to as the "stand alone disclosure" requirement.  Additionally, CRST's authorization form also required consumers to waive their rights under federal law.

27.    CRST violated 15 U.S.C. §1681b(b)(3)(A), which requires employers to notify applicants of a pending adverse action based in whole or in part on the consumer report with both a copy of the consumer report and a description of the applicant's rights under the FCRA. Specifically, CRST took adverse action based on consumer reports without first providing

Plaintiff  and other putative class members a copy of the pertinent consumer report, a summary of their rights under the FCRA, or providing them a reasonable opportunity to respond to the information in the report.

28.    The FCRA also contains several other notice provisions, such as §1681b(4)(B) (notice of national security investigation); §1681c(h) (notification of address discrepancy); §1681(g) (full file disclosure to consumers); §1681k(a)(1) (disclosure regarding use of public record information); §1681h (form and conditions of disclosure); and §1681(m)(a) (notice of adverse action).  The purpose the FCRA notice provisions is to put consumers on notice that a consumer report may be prepared.  This gives consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes allowing consumers the opportunity to ensure accuracy, confidentiality, and fairness.

29.    Without clear notice that a consumer report is going to be procured, consumers are deprived of the opportunity to make informed decisions or otherwise assert protected rights.

30.    Using a FCRA disclosure that is not "stand alone" violates the plain language of the statute, and flies in the face of unambiguous case law and regulatory guidance from the Federal Trade Commission ("FTC").   *Jones v Halstead Mgmt. Co.*, LLC, 81 F. Supp. 3d 324, 333 (S.D.N.Y 2015)(disclosure not "stand alone" when it contains extraneous information such as state specific disclosures); *Moore v. Rite Aid Hdqtrs. Corp.*, 2015 U.S. Dist. LEXIS, at *35 (E.D. Pa. May 29, 2015)("The text of the statute and available agency guidance demonstrate that the inclusion of information on the form apart from the disclosure and related authorization violates §1681b(b)(2)(a).").

31.    CRST knowingly and recklessly disregarded case law and regulatory guidance and willfully violated the FCRA by procuring consumer report information  on consumers

without complying with the disclosure and authorization requirements of the statute.

32.    CRST's conduct was willful because:

    a.    CRST is a large and sophisticated employer with access to legal advice through its own attorneys and there is no evidence it determined its own conduct was lawful;

    b.    CRST knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, case law, and the plain language of the statute;

    c.    CRST voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

    d.    CRST ignored or failed to utilize the compliance guidance and materials offered by HireRight, the consumer reporting agency CRST hired to procure consumer reports.

33.    Moreover, and most importantly, CRST was previously subject of a similar lawsuit alleging violations of the FCRA. The lawsuit, filed in 2011, was settled in January, 2014, for millions of dollars.  *See White v. CRST, Inc.*, 1:11-cv-02615-JJG, (U.S. Dist. Ct., N.D. Ohio).

## ALLEGATIONS SPECIFIC TO PLAINTIFF

34.    Plaintiff applied with Trucking Careers, LLC for placement in a company paid CDL training program in or around June 27, 2016.

35.    Trucking Careers failed to notify Plaintiff a consumer report would be procured for employment purposes.

36.    Trucking Careers failed to inform Plaintiff of his rights pursuant to the Fair Credit Reporting Act.

37.    Trucking Careers failed to notify Plaintiff that CRST would procure a consumer report on him.

38.     Trucking Careers caused CRST to procure a consumer report on Plaintiff without Plaintiff's consent.

39.     On or about June 28, 2016, CRST procured a consumer report on Plaintiff without Plaintiff's knowledge or authorization.  At that time, there had been no contact between Plaintiff and CRST.  In doing so, CRST violated 15 U.S.C. §1681b(b)(2)(A)(i) because CRST procured a consumer report on Plaintiff without providing him a lawful disclosure.

40.     CRST also violated 15 U.S.C. §1681b(b)(2)(A)(ii) because CRST procured a consumer report on him without any written authorization.

41.     Thereafter, Plaintiff was conditionally hired by CRST and placed in a company paid CDL training program at Janes Technical Institute ("J-Tech") in Jacksonville, Florida.

42.     Upon arriving at J-Tech, Plaintiff was required to fill out an employment application with CRST, which included the company's FCRA disclosure and authorization forms.

43.     The forms contained extraneous information, including but not limited to, purported blanket authorizations to release information and waivers of federal and state rights regarding private information.

44.     The forms also contained extraneous information about state laws that did not apply to Plaintiff.

45.     This time, it was unlawful for CRST to procure a consumer report on Plaintiff without making the disclosures required by the FCRA. CRST violated 15 U.S.C. §1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute.

46.    Specifically, CRST unlawfully inserted extraneous information into forms purporting to grant CRST authority to obtain and use consumer report information for employment purposes. The FCRA forbids this practice, since it mandates that all forms granting the authority to access and use consumer report information for employment purposes be "stand-alone forms" that do not include any additional agreements. CRST's decision to include purported waivers of rights and notice into its forms is contrary to both the plain language of the FCRA and to unambiguous regulatory guidance provided by the FTC.

47.    The inclusion of extraneous information in CRST's disclosure and authorization forms confused Plaintiff.

48.    CRST failed to satisfy the FCRA requirements pertaining to the disclosure and authorization when it procured Plaintiff's consumer report without making the proper disclosures.

49.    After Plaintiff had been attending J-Tech for over one week, a J-Tech employee informed Plaintiff that CRST was terminating his employment because he had allegedly falsified his employment application.  Consequently, Plaintiff could not remain in the J-Tech company paid training program.

50.    Plaintiff was never given pre-adverse notice of the information contained in the consumer report upon which CRST based its decision to terminate his employment.

51.    CRST did not provide Plaintiff with a copy of the consumer report that it had relied upon prior to terminating his employment or a summary of his rights.

## CLASS ACTION ALLEGATIONS

52.    In Counts one and two, Plaintiff asserts an FCRA claim against CRST on behalf of a "Indirect Background Check Class" consisting of:

> **All consumers win the United States who were the subject of a consumer report for employment purposes that was caused to be procured by a third party and procured by CRST, Inc. within five years of the filing of this complaint through the date of final judgment.**

53.    In Counts three and four, Plaintiff asserts an FCRA claim against CRST on behalf of a "Background Check Class" consisting of:

> **All applicants for employment that applied for employment directly with CRST, Inc., conditionally hired employees or current employees who were the subject of a consumer report for employment purposes that was procured by CRST, Inc. within five years of the filing of this complaint through the date of final judgment in this action.**

54.    In Count five, Plaintiff asserts an FCRA claim against CRST on behalf of a "Pre-Adverse Action Class" defined as follows:

> **All CRST, Inc. applicants and employees, whether applying directly with CRST, Inc. or indirectly through a third party, against whom adverse action was taken based on information contained in a consumer report obtained by CRST, Inc. within five years of the filing of this complaint who were not provided proper pre-adverse action notice.**

55.    ***Numerosity***:    The members of the putative classes are so numerous that joinder of all Class members is impracticable.  CRST regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, in the hiring process. Plaintiff is informed and believes that during the relevant time period, thousands of CRST's employees and prospective employees satisfy the definition of the putative class.

56.   ***Typicality***:   Plaintiff's claims are typical of those of the members of the putative classes. CRST typically uses consumer reports to conduct background checks on employees and prospective employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other putative class members, and CRST treated Plaintiff consistent with other putative class members in accordance with its standard policies and practices.

57.   ***Adequacy***:   Plaintiff will fairly and adequately protect the interests of the putative classes, and has retained counsel experienced in complex class action litigation.

58.   ***Commonality***:   Common questions of law and fact exist as to all members of the putative classes, and predominate over any questions solely affecting individual members of the putative classes. These common questions include, but are not limited to:

a.   Whether CRST uses consumer report information to conduct background checks on applicants, employees, and trainee employees;

b.   Whether CRST's background check practices and/or procedures comply with the FCRA;

c.   Whether CRST violated the FCRA by procuring consumer report information without making proper disclosures in the format required by the statute;

d.   Whether CRST violated the FCRA by procuring consumer report information without prior consent;

e.   Whether CRST violated the FCRA by procuring consumer report information based on invalid authorizations;

f.   Whether CRST violated the FCRA by failing to provide pre-adverse action notice before taking adverse employment action based upon a consumer report;

g.   Whether CRST's violations of the FCRA were willful;

h.   The proper measure of statutory damages; and

i.   The proper form of injunctive and declaratory relief.

59.     This case is maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for CRST. Further, adjudication of each individual Class member's claim as separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

60.     This case is also maintainable as a class action because CRST has acted or refused to act on grounds that apply generally to the putative classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

61.     Class certification is also appropriate under because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. CRST's conduct, which is described in this Complaint, stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions against CRST, as the amount of each Class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning CRST's practices. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

62.    Plaintiff intends to send notice to all members of the putative classes to the extent required by the Federal Rules of Civil Procedure. The names and addresses of the putative class members are readily available from CRST's records.

## FIRST CLAIM FOR RELIEF
### Failure to Make Proper Disclosure in Violation of FCRA
### Violation of 15 U.S.C. §§1681b(b)(2)(B)(2)(B)(i)

63.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs ***.

64.    In violation of the FCRA, CRST failed to satisfy the notice requirements of 15 U.S.C. §§1681b(b)(2)(B)(2)(B)(i) because CRST failed to notify Plaintiff and the members of the Indirect Background Check Class notice CRST would procure a consumer report on them for employment purposes and a summary of their rights.

### *Plaintiffs' First Concrete Injury under* 15 U.S.C. §§1681b(b)(2)(B)(i):
### *Informational Injury*

65.    Plaintiff suffered a concrete informational injury because CRST failed to provide Plaintiff with information to which he was entitled to by statute, namely notice CRST was procuring a consumer report on him.  Through the FCRA, Congress created a new right – the right to receive the required notice as set out in the FCRA – and a new injury – not receiving a notice.  *Church v. Accretive Heath, Inc.*, 2016 U.S. App. Lexis 12414, *1 (11th Cir. July 6, 2016), *3, n. 2 (rejecting defendant's argument that a plaintiff "cannot satisfy the demands of Article III standing by alleging a bare procedural violation."   The Court stated "This statement is inapplicable to the allegations at hand, because Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right."); *Moody v. Ascenda*

*USA Inc.*, Case No.: 16-cv-60364 (S.D. Fla. October 5, 2016)(Dimitrouleas, W.)(denying defendant's motion to dismiss plaintiffs' claims pursuant to 15 U.S.C. §1681b(b)(2) noting "Plaintiffs sufficiently alleged a concrete and particularized injury and thus have standing to sue pursuant to *Spokeo.*"); *Thomas v. FTS USA*, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016)(holding that "it was Congress' judgment, as clearly expressed in §1681b(b)(2) … to afford consumers rights to information and privacy," and thus that "the rights created by §1681b(b)(2) are substantive rights.")

66.    Pursuant to §1681(b)(2), Plaintiff was entitled to receive certain information at specific time, namely a notice that a consumer report may be procured by CRST for employment purposes.  Such a disclosure was required to be provided to Plaintiff *before* the consumer report was to be procured.  By depriving Plaintiff of this information, at the time he was entitled to receive it, CRST injured Plaintiff and the putative class members he seeks to represent. *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 449 (1989); *Federal Election Commission v. Atkins,* 524 U.S. 11 (1998).

67.    CRST violated the FCRA by procuring consumer reports on Plaintiff and other Indirect Background Check Class members without first providing proper notice in the format required by the statute.  Namely, these disclosures had to be made <u>before</u> CRST actually procured consumer reports.  The required disclosures were not made, causing Plaintiff and the CRST Indirect Background Check Class members informational injury.  *Moody v. Ascenda USA Inc.*, Case No.: 16-cv-60364 (S.D. Fla. October 5, 2016); *Thomas v. FTS USA*, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016).

### *Plaintiff's Second Concrete Injury under* 15 U.S.C. §1681b(b)(2)(A)(i): *Invasion of Privacy*

68.     CRST invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsection: 15 U.S.C. §1681b(b)(2). In this case, CRST did not provide Plaintiff with the disclosures required by law.

69.     Plaintiff's consumer report contained a wealth of private information which CRST had no right to access absent a specific Congressional license to do so. The report included, *inter alia*, Plaintiff's date of birth, address history, educational history, drivers' license number, driving history, partial social security numbers.  By procuring reports containing this private information and delving deep into Plaintiff's personal life without complying with the FCRA's notice requirements, CRST illegally invaded Plaintiff's right to privacy.

70.     CRST's illegal invasion into Plaintiff's privacy created a foreseeable risk of harm.

71.     The forgoing violations were willful. At the time CRST violated 15 U.S.C. §1681b(b)(2)(B)(i),  CRST knew it was required to provide notice it was procuring a consumer report for employment purposes and a summary of rights. CRST's willful conduct is also reflected by, among other things, the following facts:

     a.     CRST is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

     b.     CRST knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

     c.     CRST voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

72.     Moreover, and most importantly, CRST was previously subject of a similar lawsuit alleging violations of the FCRA.  The lawsuit, filed in 2011, was settled in January, 2014, for millions of dollars.   *See White v. CRST, Inc.*, 1:11-cv-02615-JJG, (U.S. Dist. Ct., N.D. Ohio).

73.     Plaintiff and the Indirect Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. §1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. §1681n(a)(2).

74.     Plaintiff and the Indirect Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. §1681n(a)(3).

**SECOND CLAIM FOR RELIEF**
**Failure to Obtain Consent in Violation of FCRA**
**Violation of 15 U.S.C.  §§1681b(b)(2)(B)(2)(B)(i)(ii)**

75.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs ***.

76.     In violation of the FCRA, CRST provided consumer reports on the Indirect Background Check Class without their knowledge or consent.

77.     The consent requirement of 15 U.S.C. §§1681b(b)(2)(B)(2)(B)(ii) follows the notice requirement of §§1681b(b)(2)(B)(2)(B)(i) and presupposes that the consent is based upon a valid notice.

78.     In violation of the FCRA, CRST failed to satisfy the notice requirements of 15 U.S.C. §1681b(b)(2)(B)(2)(ii) because prior to procuring a consumer report, CRST failed to obtain consent, orally, in writing, or electronically,  to the procurement of the consumer report.

### Plaintiffs' First Concrete Injury under 15 U.S.C. §1681b(b)(2)(B)(ii): Informational Injury

79.    Plaintiff suffered a concrete informational injury because CRST failed to provide Plaintiff and the putative Indirect Background Check Class with information to which they were entitled to by statute, namely notice CRST was going to procure a consumer report. Through the FCRA, Congress created a new right – the right to receive the required notice as set out in the FCRA. *Church v. Accretive Heath, Inc.*, 0216 U.S. App. Lexis 12414, *1 (11th Cir. July 6, 2016), *3, n. 2 (rejecting defendant's argument that a plaintiff "cannot satisfy the demands of Article III standing by alleging a bare procedural violation." The Court stated "This statement is inapplicable to the allegations at hand, because Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right."); *Moody v. Ascenda USA Inc*., Case No.: 16-cv-60364 (S.D. Fla. October 5, 2016)(Dimitrouleas, W.)(denying defendant's motion to dismiss plaintiffs' claims pursuant to 15 U.S.C. §1681b(b)(2) noting "Plaintiffs sufficiently alleged a concrete and particularized injury and thus have standing to sue pursuant to *Spokeo*."); *Thomas v. FTS USA*, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016)(holding that "it was Congress' judgment, as clearly expressed in §1681b(b)(2) … to afford consumers rights to information and privacy," and thus that "the rights created by §1681b(b)(2) are substantive rights.")

80.    Pursuant to §1681(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely the notice set forth in §1681b(b)(2)(B)(ii). Such notice was required to be provided to Plaintiff *before* the consumer report was to be procured. By depriving Plaintiff of this information, in the form and at the time he was entitled to receive it, CRST injured Plaintiff and the putative class members he seeks to represent. *Public Citizen v. U.S. Department of*

*Justice,* 491 U.S. 440, 449 (1989); *Federal Election Commission v. Atkins,* 524 U.S. 11 (1998).

81.     CRST violated the FCRA by procuring consumer reports on Plaintiff and other Indirect Background Check Class members without first making proper notice in the format required by 15 U.S.C. §1681b(b)(2)(B)(i).  Namely, these disclosures had to be made: (1) before CRST actually procured consumer reports.  The required notice not made, causing Plaintiff an informational injury. *Moody v. Ascenda USA Inc.*, Case No.: 16-cv-60364 (S.D. Fla. October 5, 2016); *Thomas v. FTS USA*, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016).

### *Plaintiff's Second Concrete Injury under 15 U.S.C. §1681b(b)(2)(B)(i):* *Invasion of Privacy*

82.     CRST invaded Plaintiff's right to privacy by procuring a consumer report on him without his knowledge or consent. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements, in this case his knowledge or consent.  As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure…"  *Harris v. Home Depot U.S.A., Inc.* F. Supp. 3d 868, 869 (N.D. Cal. 2015).

83.     Plaintiff's consumer report contained a wealth of private information which CRST had no right to access absent a specific Congressional license to do so. The report included, *inter alia*, Plaintiff's date of birth, address history, educational history, drivers' license number, driving history, partial social security numbers.  By procuring reports containing this private information and delving deep into Plaintiff's personal life without Plaintiff's consent, CRST illegally invaded Plaintiff's right to privacy.

84.     CRST's illegal invasion into Plaintiff's privacy created a risk of harm.

85.    The forgoing violations were willful. At the time CRST violated 15 U.S.C. §1681b(b)(2)(B)(ii) CRST knew it was required to obtain Plaintiff's consent prior to obtaining and then utilizing a consumer report on Plaintiff and the Putative Class. CRST's willful conduct is also reflected by, among other things, the following facts:

      a.    CRST is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

      b.    CRST knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      c.    CRST voluntarily rand a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

86.    Moreover, and most importantly, CRST was previously subject of a similar lawsuit alleging violations of the FCRA.  The lawsuit, filed in 2011, was settled in January, 2014, for millions of dollars.   *See White v. CRST, Inc.*, 1:11-cv-02615-JJG, (U.S. Dist. Ct., N.D. Ohio).

87.    Plaintiff and the Indirect Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. §1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. §1681n(a)(2).

88.    Plaintiff and the Indirect Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. §1681n(a)(3).

### THIRD CLAIM FOR RELIEF
**Failure to Make Proper Disclosure in Violation of FCRA**
**15  U.S.C. §1681b(b)(2)(A)(i)**

89.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs **.

90.     In violation of the FCRA, the notice and authorization forms CRST required the Background Check Class to complete as a condition of its employment with CRST does not satisfy the disclosure requirements of 15 U.S.C. §1681b(b)(2)(A)(i) because CRSTs failed to provide a stand-alone document as to the consumer report information being obtained and utilized.  Furthermore, forms required Plaintiff and members of the putative Direct Background Check Class to waive rights protected by state and federal law.

*Plaintiffs' First Concrete Injury under 15 U.S.C. §1681b(b)(2)(A)(i):*
*Informational Injury*

91.     Plaintiff suffered a concrete informational injury because CRSTs failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress created a new right – the right to receive the required disclosure as set out in the FCRA – and a new injury – not receiving a stand-alone disclosure.  *Church v. Accretive Heath, Inc*., 0216 U.S. App. Lexis 12414, *1 (11th Cir. July 6, 2016), *3, n. 2 (rejecting defendant's argument that a plaintiff "cannot satisfy the demands of Article III standing by alleging a bare procedural violation"  The Court stated "This statement is inapplicable to the allegations at hand, because Church has not alleged a procedural violation. Rather, Congress provided Church with a substantive right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right."); *Moody v. Ascenda USA Inc*., Case No.: 16-cv-60364 (S.D. Fla. October 5, 2016)(Dimitrouleas, W.)(denying defendant's motion to dismiss plaintiffs' claims pursuant to 15 U.S.C. §1681b(b)(2) noting

"Plaintiffs sufficiently alleged a concrete and particularized injury and thus have standing to sue pursuant to *Spokeo*."); *Thomas v. FTS USA*, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016)(holding that "it was Congress' judgment, as clearly expressed in §1681b(b)(2) … to afford consumers rights to information and privacy," and thus that "the rights created by §1681b(b)(2) are substantive rights.").

92.     Pursuant to §1681b(b)(2), Plaintiff was entitled to receive certain information a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff before the consumer report was to be procured. By depriving Plaintiff of this information, in the form and at the time he was entitled to receive it, CRSTs injured Plaintiff and the putative class members he seeks to represent. *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 449 (1989); *Federal Election Commission v. Atkins,* 524 U.S. 11 (1998).

93.     CRST violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. §1681b(b)(2)(A)(i).  Namely, these disclosures had to be made: (1) before CRST actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that CRSTs might procure a consumer report on each of them for purposes of employment. The required disclosures were not made, causing Plaintiff an informational injury.  *Moody v. Ascenda USA Inc*., Case No.: 16-cv-60364 (S.D. Fla. October 5, 2016); *Thomas v. FTS USA*, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016).

*Plaintiff's Second Concrete Injury under 15 U.S.C. §1681b(b)(2)(A)(i):*
*Invasion of Privacy*

94.     CRSTs invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in the following subsections: 15 U.S.C. §1681(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.* F. Supp. 3d 868, 869 (N.D. Cal. 2015).

95.     Plaintiff's consumer report contained a wealth of private information which CRST had no right to access absent a specific Congressional license to do so. The report included, *inter alia*, Plaintiff's date of birth, address history, educational history, drivers' license number, driving history, partial social security numbers.  By procuring reports containing this private information and delving deep into Plaintiff's personal life without complying with the FCRA's disclosure requirements, CRSTs illegally invaded Plaintiff's right to privacy.

96.     CRSTs' illegal invasion into Plaintiff's privacy created a risk of harm. Plaintiff was required to provide a blanket authorization to a broad range of individuals, employers, federal and state agencies and educational institutions to release personal and private information about him to CRST and the screening company.

97.     The forgoing violations were willful. At the time CRST violated 15 U.S.C. §1681b(b)(2)(A)(i) CRSTs knew they were required to provide a stand-alone form prior to obtaining and then utilizing a consumer report on Plaintiff and the putative class. A plethora of authority, including both case law and FTC opinions, existed at the time of CRSTs' violations on this very issue.  CRSTs' willful conduct is also reflected by, among other things, the following

facts:

    a.    CRST knew of potential FCRA liability (which is precisely why it tried to avoid it);

    b.    CRST is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    c.    CRSTs knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

    d.    CRSTs voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

98.    Moreover, and most importantly, CRST was previously subject of a similar lawsuit alleging violations of the FCRA. The lawsuit, filed in 2011, was settled in January, 2014, for millions of dollars. *See White v. CRST, Inc.*, 1:11-cv-02615-JJG, (U.S. Dist. Ct., N.D. Ohio).

99.    Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. §1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. §1681n(a)(2).

100.    Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. §1681n(a)(3).

**FOURTH CLAIM FOR RELIEF**
**Failure to Obtain Proper Authorization in Violation of FCRA**
**15 U.S.C. §1681b(b)(2)(A)(ii)**

101.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs **.

102.    CRST violated the FCRA by procuring consumer reports relating to Plaintiff and

other Background Check Class members without proper authorization.

103.    The authorization requirement under 15 U.S.C. §1681b(b)(2)(A)(ii) follows the disclosure requirement of §1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure. "After all, one cannot meaningfully authorize her employer to take an action if she does not grasp what that action entails." *Burghy v. Dayton Racquet Club, Inc.,* 695 F. Supp. 2d 689, 699 (S.D. Ohio 2010); *see also United States v. DeFries,* 129 F. 3d 1293, 1307 (D.C. Cir. 1997)("[A]uthorization secured 'without disclosure of …material information' is a nullity.").

### *Plaintiffs' First Concrete Injury under 15 U.S.C. §1681b(b)(2)(A)(ii):* *Informational Injury*

104.    Plaintiff suffered a concrete informational injury because CRST failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure form. Thus, through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure. *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016); *Moody v. Ascenda USA Inc.*, Case No.: 16-cv-60364 (S.D. Fla. October 5, 2015). *Thomas v. FTS USA*, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016).

105.    Pursuant to §1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff before the consumer report was to be procured. By depriving Plaintiff of this information, CRST injured Plaintiff and the putative class members he seeks to represent. *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins,* 524 U.S. 11 (1998) Then 15 U.S.C. §1681b(b)(2)(A)(ii).

106.   CRSTs violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. §1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before CRST actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that CRST might procure a consumer report on each of them for purposes of employment.

107.   Plaintiff suffered an informational injury. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. §1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A. Inc.*, 114 F. Supp 3d 868, 869 (N.D. Cal. 2015).

### *Plaintiffs' Second Concrete Injury under15 U.S.C. §1681b(b)(2)(A)(i): Invasion of Privacy*

108.   Additionally, CRSTs invaded Plaintiff's right to privacy. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. §1681b(b)(2). As one court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A.*, Inc., 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).   Plaintiff's consumer report contained a wealth of private information which CRSTs had no right to access absent a specific Congressional license to do so. Without a valid stand-alone FCRA disclosure there can

be no valid authorization for CRSTs to access Plaintiff's consumer reports and delve deep into Plaintiff's private life. The report included, *inter alia,* Plaintiff's date of birth, address history, educational history, drivers' license numbers, driving history, partial social security numbers.. By procuring reports containing this private information without complying with the FCRA's disclosure requirements, CRST illegally invaded Plaintiff's right to privacy.

109.    The foregoing violations were willful.  At this time CRST violated 15 U.S.C. §1681b(b)(2)(A)(ii). CRST knew that in order for it to have authorization to obtain consumer reports on Plaintiff and the putative class members it was required to provide a stand-alone form (separate from the employment application) prior to obtaining and then utilizing a consumer report on Plaintiff and the Putative Class. CRSTs' willful conduct is also reflected by, among other things, the following facts:

      a.    CRST is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

      b.    CRSTs knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

      c.    CRSTs voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

110.    Moreover, and most importantly, CRST was previously subject of a similar lawsuit alleging violations of the FCRA.  The lawsuit, filed in 2011, was settled in January, 2014, for millions of dollars.   *See White v. CRST, Inc.*, 1:11-cv-02615-JJG, (U.S. Dist. Ct., N.D. Ohio).

111.    Plaintiff and the Background Check Class are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. §1681n(a)(1)(A), in addition to punitive

damages under 15 U.S.C. §1681n(a)(2).

112.    Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. §1681n(a)(3).

**FIFTH CLAIM FOR RELIEF**
*Failure to Provide Pre-Adverse Action Notice*
*Violation of 15 U.S.C. §1681b(b)(3)(A)*

113.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs 1-**.

114.    CRST used a consumer report, as defined by the FCRA, to take adverse employment action against Plaintiff and the other members of the Pre-Adverse Action Notice Class.

115.    CRST violated the FCRA by failing to provide Plaintiff and other Pre-Adverse Action Class members with a copy of the consumer report that may have been used to take adverse employment action against them. 15 U.S.C. §1681b(b)(3)(A).

116.    The foregoing violations were willful. CRST acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Pre-Adverse Action Class members under 15 U.S.C. §1681b(b)(3)(A). CRST knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and in the promulgations of the Federal Trade Commission. CRST obtained or otherwise had available substantial written materials that apprised CRST of its duties under the FCRA. Any reasonable employer knows of the existence of these FCRA mandates, or can easily discover their substance.

### Plaintiffs' First Concrete Injury under 15 U.S.C §§1681b(b)(3)(A)(i)-(ii):
### Informational Injury

117.    Plaintiff and other putative class members suffered a concrete informational injury because CRST failed to provide Plaintiff and other putative class members with information to which they were entitled to by statute, namely pre-adverse action notice, a copy of the applicable consumer report and a summary of rights. Thus, through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving pre-adverse action notice, a copy of the applicable consumer report and a summary of rights. *Church v. Accretive Health, Inc*., 2016 U.S. App. LEXIS 12414, *1 (11th Cir. July 6, 2016); *Moody v. Ascenda USA Inc*., Case No.: 16-cv-60364 (S.D. Fla. October 5, 2016).

118.    Pursuant to §§1681b(b)(3)(A)(i)-(ii), Plaintiff and other putative class members were entitled to receive certain information at a specific time, namely pre-adverse action notice, a copy of the applicable consumer report and a summary of rights. Such a notice was required to be provided to Plaintiff before the consumer report was to be procured. By depriving Plaintiff of this information, CRST injured Plaintiff and the putative class members he seeks to represent. *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins,* 524 U.S. 11 (1998); 15 U.S.C. §1681b(b)(3)(A)(ii).

119.    Failing to provide Plaintiff and the members of the putative Pre-Adverse Action Class Members created a foreseeable risk of harm that adverse employment actions would be taken against consumers based upon incorrect and inaccurate information contained in the consumer report  agency or anyone else providing information about Plaintiff.

120.    The foregoing violations were willful.  CRST acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other Adverse Action class

members.  CRST knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the FTC. CRST obtained or had available substantial written materials which apprised them of their duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.    Moreover, CRST has previously been a CRST in a lawsuit containing similar allegations, which was settled in January, 2014.

121.    Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

122.     Plaintiff and the Pre-Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3).

## PRAYER FOR RELIEF

123.    **WHEREFORE**,  Plaintiff, on behalf of himself and  the  Putative Classes, prays for relief as follows:

    a.    Determining that this action may proceed as a class action;

    b.    Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

    c.    Issuing proper notice to the Putative Classes at CRST's expense;

    d.    Declaring that CRSTs committed multiple, separate violations of the FCRA;

    e.    Declaring that CRSTs acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    f.    Awarding statutory damages as provided by the FCRA, including punitive damages;

g.    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h.    Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff and the Putative Class demand a trial by jury.

Respectfully submitted,

This 24th day of January, 2017.          **MORGAN & MORGAN, P.A.**

**/s/ Marc R. Edelman**
Marc R. Edelman, Esq.
Fla. Bar No. 0096342
201 N. Franklin Street, #700
Tampa, FL 33602
Telephone: 813-223-5505
Fax:  813-257-0572
MEdelman@forthepeople.com
*Attorney For Plaintiffs*